UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUMAN DHAMIJA, <br><br>               Plaintiff, <br>       v. <br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, BBVA COMPASS BANCSHARES, INC., LONG-TERM DISABILITY PLAN, and DOES 1 through 10, <br><br>               Defendants. | Case No.: 5:13-CV-02541-LHK <br><br>ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS |

Plaintiff Suman Dhamija ("Dhamija") brings this action against Defendants Liberty Life Assurance Company of Boston and BBVA Compass Bancshares, Inc., Long-Term Disability Plan under 29 U.S.C. § 1132(a)(1)(B) of the Employment Retirement Income Security Act of 1974 ("ERISA"), alleging violations of the terms of her long-term disability plan. ("Compl.") ECF No. 1 at 4.

Before the Court is Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies. ("Mot.") ECF No. 6. Dhamija opposes the Motion, ("Opp'n") ECF No. 18, and Defendants replied, ("Reply") ECF No. 20. Pursuant to Civil Local Rule 7–1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the October 17,

1
Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS

2013 Hearing and Case Management Conference. For the reasons stated herein, the Court DENIES Defendants' Motion to Dismiss and REMANDS for further administrative review.

### I. BACKGROUND[1]

Dhamija worked for BBVA starting in April 2008. Compl. ¶ 7. BBVA provided long-term disability insurance to Dhamija. *Id.* ¶ 6. Liberty Life Assurance Company ("Liberty Life") is the claims administrator for the BBVA Compass Bancshares, Inc. Long-Term Disability Plan ("LTD Plan"). ("Wharton Decl.") ECF No. 7 ¶ 5. BBVA is the plan administrator, but the insurance policy that insures the LTD Plan "vests discretionary authority in Liberty Life." *Id.* ¶ 6. Thus, Liberty Life has the "ultimate discretion and authority to determine all questions of eligibility for payments under the Plan, to determine the amount and manner of payment of benefits under the Plan, and to construe and interpret the terms of [the] Policy." *Id*. Liberty Life is also "the sole source of payment of benefits under the Plan." *Id*.

Dhamija allegedly became disabled on or around July 8, 2011, and thereafter submitted a claim to Liberty Life for long-term disability benefits. Compl. ¶¶ 7, 9. Liberty Life granted long-term disability benefits to Dhamija for eight months until Liberty Life denied Dhamija's claim for disability benefits on August 28, 2012. *Id*. ¶ 9.

On the same day Liberty Life denied Dhamija's claim for benefits, Liberty Life sent Dhamija a letter explaining Liberty Life's decision to deny benefits. ("August 28 Letter") McGee Decl. Ex. B, ECF No. 8-1. The August 28 Letter informed Dhamija that she had a right to appeal the denial and explained the procedure for filing an appeal. *Id.* The Letter requested that any appeal

---

[1] The Ninth Circuit treats a motion to dismiss an ERISA denial-of-benefits claim for failure to exhaust administrative remedies as an unenumerated motion to dismiss. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1088 (9th Cir. 2012). In addressing such a motion, the Court may rely on evidence extrinsic to the pleadings and may resolve disputed issues of fact. *Id.*; *see also Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 881 (9th Cir. 2011) (en banc) ("[I]n entertaining an unenumerated motion to dismiss, the court may look beyond the pleadings and decide disputed issues of fact.") (internal quotation marks omitted). The Court will therefore consider the exhibits accompanying the parties' briefs in deciding this Motion.

of the denial be accompanied by medical and other information that supported the claim and stated that any appeal must "state the reasons why you feel your claim should not have been denied." *Id.*

In addition to sending the August 28 Letter, Liberty Life claims to have left Dhamija a voicemail on August 28, 2012, informing Dhamija that her benefits claim had been denied. ("Eubanks Decl.") ECF No. 10 ¶ 6. Liberty Life also claims to have phoned Dhamija on August 29, 2012, to inform her for a second time that her claim had been denied and that she could appeal the decision. *Id.* ¶ 7; *see also* ("Dhamija Decl.") ECF No. 18-2 ¶ 2.

Dhamija does not recall the exact date she received the August 28 Letter, but alleges that she could not have received it earlier than September 4, 2012. Dhamija Decl. ¶ 3. Following receipt of the August 28 Letter, Dhamija faxed Liberty Life a request for all documents that Liberty Life used in support of its adverse benefits determination. McGee Decl. ¶ 10. Liberty Life promptly complied. *Id.* ¶ 11.

No further communication occurred between the parties until February 27, 2013 when Dhamija's representative, Selene Wilkes of the DL Law Group, faxed a letter to Liberty Life "to confirm Ms. Dhamija's appeal to Liberty Life . . . of [Liberty Life's] denial of [Dhamija's] . . . claim," and asking Liberty Life to "not begin the review of [Dhamija's] appeal until the appeal documents are complete." ("February 27 Letter") ECF No. 18-3 Ex. 1. Wilkes also left Liberty Life a voicemail to notify Liberty Life of Dhamija's appeal. ("Wilkes Decl.") ECF No. 18-3 ¶ 3. The next day Rhonda Eubanks of Liberty Life acknowledged receipt of the February 27 Letter in a phone conversation with Wilkes. *Id.* ¶ 5; Eubanks Decl. ¶ 10. Eubanks informed Wilkes that Dhamija's appeal was time-barred and that the February 27 Letter would be forwarded to the "Appeals Review Unit." Wilkes Decl. ¶ 5; Eubanks Decl. ¶ 10. Two days later, on March 1, 2013, Eubanks called Wilkes to confirm that Dhamija's appeal was time-barred and that the February 27 Letter would be forwarded to the Appeals Review Unit. Wilkes Decl. ¶ 6. Wilkes responded that same day by faxing another letter to Liberty Life disputing Liberty Life's time-bar determination. ("March 1 Letter") Wilkes Decl. Ex. 2.

On March 8, 2013, Liberty Life's appeals review consultant, Kimberly Murray ("Murray"), sent a letter to Wilkes stating that Dhamija's claim was time-barred and that "Liberty's final determination was rendered on August 28, 2012[;] therefore no additional information will be considered." ("March 8 Letter") ECF No. 8-1 Ex. J. The March 8 Letter did not state that Liberty Life conducted a review of Dhamija's claim independent of Liberty Life's initial decision to deny benefits. *Id.* On March 25, 2013, Wilkes sent a letter with medical records to be reviewed by Liberty Life "in reconsideration of . . . Dhamija's claim for benefits." ("March 25 Letter") McGee Decl. Ex. K. After receiving this new medical evidence, Liberty Life again decided not to conduct an administrative review of its August 28, 2012 adverse benefit determination. McGee Decl. ¶ 20. Dhamija subsequently filed this action on June 5, 2013. ECF No. 1.

## II.     LEGAL STANDARDS

### A.     Notification of Adverse Benefit Decision Requirements Under ERISA

"ERISA seeks to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan." *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1070 (9th Cir. 2005) (internal quotation marks omitted). ERISA fulfills this purpose, in part, by requiring that "every employee benefit plan . . . provide adequate notice *in writing* to any participant or beneficiary whose claim for benefits under the plan has been denied." 29 U.S.C. § 1133(1) (emphasis added). The Department of Labor ("DOL") has issued regulations interpreting Section 1133, which require that plan administrators "provide a claimant with *written* or electronic notification of any adverse benefit determination."[2] 29 C.F.R. § 2560.503-1(g)(1) (emphasis added). The administrator must also "[p]rovide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination." 29 C.F.R. § 2560.503-1(h)(3)(i); *see also id.* § 2560.503-1(h)(4).

### B.     Administrative Exhaustion

---

[2] "[E]lectronic notification" is not at issue here. All communications between Dhamija and Liberty Life took place either in writing or over the telephone.

4
Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS

"[T]he general rule governing ERISA claims [is] that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Diaz v. United Agr. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995) (citing *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir.1980)). The administrative exhaustion requirement, while not explicitly in the text of the statute, is "consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise." *Id*.

### C. Standard of Review When Reviewing a Denial of Benefits Under ERISA

Under *Abatie v. Alta Health & Life Ins. Co.*, there are two standards of review that may apply to the review of an administrator's adverse benefits determination. 458 F.3d 955, 962-63 (9th Cir. 2006) (en banc). In particular, if the plan does not "confer discretion on the administrator 'to determine eligibility for benefits or to construe the terms of the plan,' a court must review the denial of benefits de novo." *Id*. at 963 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, if the plan "*does* confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion." *Id.* The plan must unambiguously provide discretion to the administrator to alter the standard of review from the default de novo review to the more lenient abuse of discretion standard. *Id.*

A plan administrator's "technical violations of ERISA's requirements" usually do not alter the standard of review unless the benefit administrator's violations are "wholesale and flagrant," *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005); however, such technical violations are a factor to consider in determining whether a plan administrator abused its discretion in denying benefits, *see Abatie*, 458 F.3d at 972. Similarly, if "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest," that too

must be "weighed as a factor in determining whether there is an abuse of discretion." *Id.* at 965 (internal quotation marks omitted).

### III. ANALYSIS

The central issue that this Court must resolve is whether Dhamija exhausted her administrative remedies prior to filing suit under ERISA. To demonstrate that Dhamija exhausted her administrative remedies, Dhamija must show that she filed a timely appeal after Liberty Life's adverse benefit determination.

The LTD Plan gives Liberty Life the discretionary authority to interpret the terms of the LTD Plan and determine benefit eligibility, and thus the Court reviews Liberty Life's conclusion that Dhamija's appeal was time-barred for abuse of discretion. *See* Wharton Decl. Ex. A at 41 ("Section 7 - General Provisions" provides that "Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder"). While the Court ultimately finds that Liberty Life committed a technical violation of ERISA, *see infra* Part III.A, the Court finds that the violation was not sufficiently "wholesale and flagrant" to alter the standard of review from abuse of discretion to de novo review. *Gatti*, 415 F.3d at 985 ("[P]rocedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm."); *see also Abatie*, 458 F.3d at 971 (examples of "wholesale and flagrant" violations include an administrator failing to disclose policy details to employees, not offering employees a claims procedure, and failing to provide employees relevant plan information in writing). Rather, the Court weighs the "procedural irregularity" in this case as a factor "in deciding whether [Liberty Life's] decision was an abuse of discretion." *Abatie*, 458 F.3d at 972.

In addition, the Court recognizes that Liberty Life has a "structural" conflict of interest because Liberty Life both "has the ultimate discretion and authority to determine all questions of eligibility for payments under the Plan" and also "is the sole source of payment of benefits under

6
Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS

the Plan." Wharton Decl. ¶ 6; *see Moody v. Liberty Life Assurance Co. of Boston*, 595 F. Supp. 2d 1090, 1097 (N.D. Cal. 2009) ("A conflict of interest can exist for ERISA purposes when a professional insurance company both evaluates claims as the plan administrator and pays benefits under the plan." (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008))); *see also Abatie*, 458 F.3d at 965. Thus, the Court "weigh[s]" the existence of a structural conflict of interest "as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Metro. Life Ins.*, 554 U.S. at 115 (internal quotation marks omitted).

Finally, the Court notes that Ninth Circuit decisions reviewing denial of benefits claims evidence a certain degree of "solicitude" for ERISA claimants. *See Eppler v. Hartford Life & Accident Ins. Co.*, No. 07-4696, 2008 WL 361137, at *11 (N.D. Cal. Feb. 11, 2008). For instance, the Ninth Circuit has noted the need to "construe ambiguities in an ERISA plan against the drafter and in favor of the insured." *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1393 (9th Cir. 1995); *see also Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002); *Goldinger v. Datex-Ohmeda Cash Balance Plan*, 701 F. Supp. 2d 1205, 1210 (W.D. Wash. 2010). Moreover, when multiple documents in an ERISA plan conflict, the Ninth Circuit applies the plan document most favorable to the employee. *See Banuelos v. Constr. Laborers' Trust Funds for S. Cal.*, 382 F.3d 897, 904 (9th Cir. 2004) ("Courts will generally bind ERISA defendants to the more employee-favorable of two conflicting documents . . . ."). This general policy of solicitude for ERISA claimants informs the Court's analysis in this case.

**A.    Whether Dhamija's February 27, 2013 Letter Constituted An Appeal**

Plaintiff argues that the February 27 Letter faxed to Liberty Life "to confirm Ms. Dhamija's appeal to Liberty" was sufficient to start the appeals process, if only to initiate Dhamija's statutorily guaranteed review of her adverse benefit determination by an appropriate fiduciary. Opp'n at 12. Defendants respond that the February 27 Letter did not constitute an appeal under the Plan because the Letter did not explain why Liberty should have granted Dhamija's claim for

7
Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS

benefits, as the August 28 Letter required. Mot. at 6; *see also* August 28 Letter ("The written request for review must . . . state the reasons why you feel your claim should not have been denied.").

The Court has not found binding Ninth Circuit authority that clearly delineates when a communication by a claimant following the denial of a claim constitutes an appeal. However, Judge Alsup's opinion in *Eppler v. Hartford Life & Accident Insurance Co.* is instructive. 2008 WL 361137 at *10-11. In *Eppler*, the claimant filed suit under ERISA for wrongful denial of his long-term disability benefits. *Id*. at *1. At issue was whether the claimant's letter constituted an appeal, and thus required review. *Id*. at *5. The claimant's letter stated: "Mr. Eppler wishes to appeal The Hartford's decision. In order to permit him to do so, and to respond adequately to The Hartford's decision, we respectfully request that you provide to us [documents and information regarding the claim]." *Id*. at *10. The court held that although the claimant failed to submit any further documents within the time for filing an appeal, this letter created a "duty to make a second, independent review, even if it were based on the same record with no new submissions." *Id*. The court reasoned that conducting a second, independent review was proper given "the solicitude under ERISA for claimants." *Id*. at *11; *cf. Barnes*, 64 F.3d at 1393 ("We must construe ambiguities in an ERISA plan against the drafter and in favor of the insured.").

Judge Alsup's reasoning is supported by DOL regulations interpreting ERISA. In particular, while 29 C.F.R. § 2560.503-1(h)(2)(ii) requires that every employee benefit plan "[p]rovide claimants the *opportunity* to submit written comments, documents, records, and other information relating to the claim for benefits" following an adverse benefit determination, *id.* (emphasis added), the regulation does not *require* claimants to submit such additional information as a prerequisite to receiving review of the decision.

Furthermore, although the August 28 Letter expressly stated that Dhamija was required to "state the reasons why [she felt her] claim should not have been denied" in order to appeal, and the August 28 Letter requested that any appeal include additional medical documentation, the text of

8

Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS


the LTD Summary Plan Description ("SPD") does not include these requirements for submitting an appeal. The SPD states merely that a claimant, or her authorized representative, "may appeal a denied claim within 180 days" after receiving a notice of denial. Wharton Decl. Ex. B ("What Do You Do To Appeal A Claim Denial?"). The SPD nowhere states that a claimant must make an argument or otherwise state her position in order to appeal, nor does it require a claimant to submit additional documents in order to trigger an appeal. *Id*. Indeed, the SPD states that "[a] final decision on the review will be made within . . . 45 days following receipt of the written request for review . . . . *without regard to whether all the information necessary to make an appeal decision accompanies the filing*," which suggests that the Plan's procedure is to conduct reviews even in the absence of additional documentation or argument provided by a claimant. *Id*. (emphasis added).

The SPD is a formal LTD Plan document governed by the requirements of 29 U.S.C. § 1022. *See Bergt*, 293 F.3d at 1143 ("[T]he SPD is a plan document and should be considered when interpreting an ERISA plan. The ERISA statute requires the plan fiduciaries to act solely in accordance with the *documents and instruments* governing the plan . . . .") (internal quotation marks omitted). By contrast, the August 28 Letter informing Dhamija of Liberty Life's decision to deny benefits is not a plan document and thus cannot modify or override the terms of the SPD itself. *See Helfrich v. Carle Clinic Ass'n, P.C.*, 328 F.3d 915, 916-17 (7th Cir. 2003) (employer communications do not trump summary plan description and other plan documents); *Eppler*, 2008 WL 361137, at *11 (plan controls over more restrictive denial letter); *cf. Banuelos*, 382 F.3d at 904 ("Courts will generally bind ERISA defendants to the more employee-favorable of two conflicting documents . . . ."). Accordingly, to the extent the August 28 Letter sought to impose additional requirements for a claimant's submission of an appeal, the SPD, with its less restrictive requirements, controls. Because the SPD did not require Dhamija to include arguments or additional documentation with her appeal, the Court rejects Defendants' contention that the February 27 Letter failed to constitute an appeal simply because it lacked argument and accompanying documentation.

To bolster their argument that the February 27 Letter was not an appeal, Defendants cite a number of non-binding cases. The Court finds that all of these are distinguishable from the present case.

Defendants rely most heavily on *Werner v. Liberty Life Assurance Co.*, an unpublished Ninth Circuit opinion, which affirmed a district court's finding that a claimant's letter providing "notice of the intent to appeal," does not constitute an appeal. 336 F. App'x. 676, 677-78 (9th Cir. 2009) (unpublished).[3] In *Werner*, the claimant sent a letter to the plan administrator on May 9, 2005, specifically asking that the plan administrator "not take any action to consider the appeal." *Id*. at 677. The plan administrator sent a letter two months later confirming that the May 9, 2005 letter was "not an appeal." *Id*. at 678. Almost seven months passed from the date of the plan administrator's letter until the claimant filed her actual appeal. *Id.* The Ninth Circuit affirmed the lower court's ruling that the claimant failed to timely exhaust her administrative remedies. *Id.*

The present case is factually distinguishable from *Werner*. Importantly, Dhamija's February 27 Letter provided more than mere "notice of the intent to appeal." Dhamija's February 27 Letter explicitly stated that the letter was being faxed "to confirm Ms. Dhamija's appeal . . . of [Liberty Life's] denial of [Dhamija's] long term disability claim."[4] Wilkes Decl. Ex. 1. In addition, while the plan administrator in *Werner* informed the claimant that her May 9, 2005 Letter did not constitute an appeal, and thus "both parties understood [the claimant's] May 9, 2005 letter was not an appeal," 336 F. App'x at 677, Liberty Life did not inform Dhamija that her February 27 Letter was insufficient to constitute an appeal. Rather, Liberty Life took the position that the February 27

---

[3] Pursuant to Circuit Rule 36-3, unpublished Ninth Circuit authority is not binding precedent on this Court.
[4] Dhamija's February 27 Letter requested that Liberty Life "not begin the review of Ms. Dhamija's appeal" until Dhamija submitted additional information. Wilkes Decl. Ex. 1. Defendants argue that Dhamija's request that Liberty Life not begin its review of her appeal until she submitted additional documents demonstrates that the February 27 Letter could not itself have constituted an appeal. Mot. at 14. The Court is unconvinced. The February 27 Letter does not expressly condition Dhamija's appeal on the submission of additional documentation; the Letter simply asks that Liberty Life wait to conduct its *review* of the appeal until this additional documentation has been provided, which the February 27 Letter promises to provide "within 21 days." Wilkes Decl. Ex. 1.

10
Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS

Letter was submitted outside the 180-day appeal window and thus was untimely, a position Dhamija immediately contested. *See* Eubanks Decl. Exs. E (record of February 28, 2013 telephone conversation between Wilkes and Eubanks); F (March 1, 2013 letter from Wilkes contesting Liberty Life's timeliness conclusion).

Finally, the claimant in *Werner* waited seven months after the plan administrator informed her that her May 9, 2005 letter did not constitute an appeal before taking any action to file an appeal or otherwise contest the plan administrator's determination. 336 F. App'x at 678. By contrast, Dhamija immediately contacted Liberty Life to dispute Liberty Life's characterization of Dhamija's appeal as "outside the 180 day timeline," McGee Decl. Exs. H (Eubanks' phone log with conversation notes), I (Wilkes' fax to Eubanks disputing timeliness of appeal), and Wilkes submitted additional documents to Liberty Life on Dhamija's behalf on March 25, *id.* Ex. K. Given the factual differences between *Werner* and the present case, the Court finds *Werner* unpersuasive.

Defendants also rely on *Edwards v. Briggs & Stratton Retirement Plan*, a Seventh Circuit case, which held that a claimant's untimely appeal cannot be remedied under the doctrine of "substantial compliance." 639 F.3d 355, 361-62 (7th Cir. 2011). In *Edwards*, the claimant sent a letter to her administrator stating that the claimant would "decide whether or not to appeal" after reviewing documents upon which the administrator based its adverse benefit determination. *Id*. at 364 (internal quotation marks omitted). Three months later, the claimant sent a second letter notifying her plan administrator that she planned to file an administrative appeal "soon." *Id*. However, the claimant did not send any actual appeal until almost two weeks after the appeal deadline. *Id*. at 359. The court noted that it was "undisputed that [the claimant's] appeal from the Plan's original denial of benefits was untimely . . . [and that the claimant had] meaningful access to review procedures." *Id*. at 361. The claimant nevertheless argued that she "substantially complied" with the appeal procedure, and thus, that her appeal was timely. *Id*. at 361-62. Under these circumstances, the court declined to rely on the "substantial compliance" doctrine—which typically applies to excuse plan administrators that commit minor procedural violations from the more

11
Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS

onerous *de novo* review of benefits denials—to find the exhaustion requirement satisfied. *Id*. at 361-63.

Here, Dhamija's February 27 Letter explicitly stated that she wished to appeal Liberty Life's denial of her claim. Moreover, Dhamija immediately disputed that her February 27 Letter was untimely in the March 1 Letter. Importantly, Dhamija does not raise the issue of "substantial compliance" as a mitigating factor. Thus, *Edwards* is inapposite to the present case.

In addition, Defendants analogize to *Swanson v. Hearst Corp. Long Term Disability Plan*, a Fifth Circuit case, which held that an initial letter stating an "intention to appeal" without supporting documents could not remedy an untimely appeal submitted more than three years after the initial notice letter. 586 F.3d 1016, 1017-19 (5th Cir. 2009) (per curiam). The claimant in *Swanson* sent a letter on August 25, 2003 stating an "intention to appeal" the administrator's adverse benefits determination. *Id*. at 1017. The administrator informed the claimant's counsel that the August 25, 2003 Letter did not constitute an appeal. *Id*. The claimant then waited more than three years to file an appeal on February 27, 2007. *Id*. The Fifth Circuit held that the August 25, 2003 letter was not an actual appeal because it only evinced an "intention to appeal" and "included no factual or substantive arguments, and no evidence . . . [such that there was] nothing for [the administrator] to consider on appeal." *Id.* at 1018-19 (internal quotation marks omitted).

The present case bears only a passing resemblance to *Swanson*. In addition to explicitly requesting an appeal in her February 27 Letter, Dhamija did not idle for more than three years before engaging in further discussions with Liberty Life about her appeal. To the contrary, Dhamija followed up with Liberty Life concerning her appeal immediately upon learning that Liberty Life considered the February 27 Letter untimely. *See* March 1 Letter. Moreover, it is unclear whether the plan in *Swanson* required claimants to submit supporting documents to appeal an adverse benefit determination, whereas in this case, the LTD Plan's SPD imposes no such requirements on claimants who wish to appeal. To the extent that the Fifth Circuit interpreted ERISA as requiring claimants to submit supporting documents before their appeal may be heard, the Court disagrees

12
Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS

1  for the reasons stated above. The Court finds *Swanson* unpersuasive in the present context and
2  declines to rely on it.[5]

3  Because the February 27 Letter fulfills the LTD Plan's minimal requirements for filing an
4  appeal, because Defendants cite neither binding nor persuasive authority to the contrary, and in
5  light of the need to construe any ambiguities concerning the requirements for filing an appeal under
6  the LTD Plan against Liberty Life, *see Barnes*, 64 F.3d at 1393, the Court finds that the February
7  27 Letter constituted an appeal under the LTD Plan.

**B.     Whether Dhamija's Appeal Was Timely**

Dhamija contends that the receipt date of the written denial notice is the proper starting date for the 180-day appeals window to run, as stated in the August 28 Letter. Opp'n at 4; *see also* August 28 Letter ("The written request for review must be sent within 180 days of the *receipt* of this letter.") (emphasis added). Dhamija argues that the start date for the 180-day window should be no earlier than September 4, 2012, because that is the earliest date that Dhamija could have received the letter. *Id*. at 9.

Defendants argue for several alternative start dates. Initially, Defendants propose the August 28 Letter mailing date as the start date for the 180-day appeal window, which would render the February 27 Letter untimely by three days. Mot. at 9. Next, Defendants suggest August 29, 2012 as the proper start date since, Defendants assert, ERISA only requires "notification," not written notification and Liberty gave Dhamija actual notice on August 29, 2012 over the phone. *Id*. at 10. An August 29 start date would put Dhamija's February 27 Letter two days outside of the 180-day appeal window. Finally, Defendants rely on the federal common law three-day mailbox rule to argue that August 31, 2012, three days after Liberty Life sent the August 28, 2012 Letter, should be the start date. *Id*. at 11. An August 31, 2012 start date would mean that Dhamija's February 27 Letter, sent on the 180th day of her 180-day appeal window, was timely.

---

[5] Defendants' remaining cases are equally distinguishable for reasons similar to those discussed above.

Under ERISA, plan administrators must provide "written or electronic notification" of adverse benefit decisions. 29 C.F.R. § 2560.503-1(g)(1). Plan administrators must give claimants 180 days from "receipt" of the written notice of adverse benefit decision to file their appeal. 29 C.F.R. § 2560.503-1(h)(3)(i). Under federal common law, which governs in the ERISA context so long as it is not "inconsistent with ERISA's objectives," *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 962 (9th Cir. 2001), if there is uncertainty about whether a party actually received a letter sent to them, then there is a rebuttable presumption that the letter was received in the "usual time," *id.* at 961-62 (extending the mailbox presumption, that "the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time," to the ERISA context).

Neither the voicemail left by Eubanks on August 28, 2012, nor the phone call made by Eubanks to Dhamija on August 29, 2012, meets the written notice requirements under ERISA or its regulations. *See* 29 U.S.C. § 1133(1) ("[E]very employee benefit plan shall . . . provide adequate notice in *writing* to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, *written* in a manner calculated to be understood by the participant.") (emphasis added); 29 C.F.R. § 2560.503-1(g)(1), (h)(3)(i). A phone call does not meet ERISA's statutory and regulatory written notice requirements, regardless of any actual notice. *See, e.g.*, *Rodolff v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1137, 1143 (S.D. Cal. 2003) ("[T]he regulations governing ERISA plans clearly state that the . . . clock for filing an appeal begins to run upon receipt of a *written* denial letter . . . .") (emphasis added); *Kansas v. Titus*, 452 F. Supp. 2d 1136, 1149 (D. Kan. 2006) ("[V]erbal notice fails to comply with the ERISA notification requirements . . . ."). Requiring written (or electronic) notice of an adverse benefit determination is sound policy. ERISA mandates that a notification of an adverse benefits determination contain numerous pieces of information.[6] Some of this information, such as internal

---

[6] 29 C.F.R. § 2560.503-1(g) requires that any adverse benefit determination notice include:
(i) The specific reason or reasons for the adverse determination;

14
Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS

plan rules and procedures or the "scientific or clinical judgment" supporting a decision, can be quite technical. ERISA also requires that such information be presented in "a manner calculated to be understood by the claimant." 29 C.F.R. § 2560.503-1(g). Even if a plan's representative verbally communicates all the required information to a claimant over the phone, the claimant is unlikely to understand and retain all the important information about the basis for the plan's decision and the procedural safeguards in place to protect the claimant when the information is presented in this manner. The deficiencies in verbal notice, in addition to the plain language of the statutory and regulatory text, convince the Court that Liberty Life's voicemail and phone call to Dhamija were not sufficient to begin Dhamija's 180-day appeal window, and thus that the 180-day appeal window did not start on either August 28 or August 29, 2012.

Defendants argue in the alternative that the three-day mailbox rule should govern, and thus that the start date should be August 31, 2012. The Court need not determine whether the three-day mailbox rule applies here, because even assuming that it does, Dhamija's claim is not time-barred. Counting from August 31, Dhamija faxed her February 27 Letter to Liberty Life on the 180th day

---

(ii) Reference to the specific plan provisions on which the determination is based;
(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
(v) In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,
    (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or
    (B) If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

of her 180-day appeal window. Accordingly, the Court finds that Dhamija's February 27 Letter was timely, whether the period for appeal began to run on August 31 or several days thereafter.

### C. Whether Remand for Further Administrative Proceedings Is the Appropriate Remedy.

"[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996). However, "retroactive reinstatement of benefits is appropriate in ERISA cases where . . . but for [the insurer's] arbitrary and capricious conduct, [the insured] would have continued to receive the benefits or where there [was] no evidence in the record to support a termination or denial of benefits." *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001) (alterations in original) (internal quotation marks omitted).

Here, Liberty Life miscontrued the LTD Plan and ERISA's requirements, both by calculating the window for Dhamija's appeal from the date Liberty Life *sent* its denial letter, as opposed to the date on which Dhamija *received* the denial letter, *see supra* Part III.B, and by imposing requirements for filing an appeal that do not appear in the SPD or any other Plan document, *see supra* Part III.A. These errors led Liberty Life to mistakenly conclude that Dhamija's appeal was time-barred. However, these errors were not but-for causes of the decision to terminate Dhamija's benefits. Liberty Life's initial decision to deny benefits was based on a determination that Dhamija's medical records did not support a finding that she was disabled. *See* August 28 Letter. This decision is independent from and predates any misapplication of the LTD Plan, and the Court cannot determine whether Liberty Life, had it considered the merits of Dhamija's appeal, would have restored Dhamija's disability benefits or not. Nor can the Court say that there is "no evidence in the record to support a termination or denial of benefits." *Grosz-Salomon*, 237 F.3d at 1163. The August 28 Letter that denied Dhamija's disability claim cites

medical evidence that, if accurate, tends to show that Dhamija was not disabled. *See* August 28 Letter (citing conversations between Liberty Life and Dhamija's treating physician, in which Dhamija's physician allegedly stated that "there are no abnormal physical findings beyond a few muscle tender points. . . . . and no definitive diagnosis has been made.").

Because the Court cannot conclude either that "but for" Liberty Life's improper refusal to consider Dhamija's appeal, Dhamija "would have continued to receive the benefits," or that there is "no evidence in the record to support a termination or denial of benefits," *Grosz-Salomon*, 237 F.3d at 1163, the Court finds that the appropriate remedy is to remand this case for further administrative review. *See also Saffle*, 85 F.3d at 461; *accord Jones v. Metro. Life Ins. Co.*, 456 F. App'x 647, 649 (9th Cir. 2011); *Eppler*, 2008 WL 361137, at *11. If, upon further administrative review, Liberty Life affirms its decision to deny Dhamija benefits, Dhamija may appeal to this Court at that time.

## IV. CONCLUSION

Because Dhamija filed a timely appeal, the Court DENIES Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies. The Court REMANDS the matter to Liberty Life to conduct a "full and fair review" of Dhamija's claim "that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary" as required by 29 C.F.R. § 2560.503-1(h).

**IT IS SO ORDERED.**

Dated: October 16, 2013

_____
LUCY H. KOH
United States District Judge

17
Case No.: 5:13-CV-02541-LHK
ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS